IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **CINDY MASSEY-HICKMAN,** )<br>   ) <br> **Claimant,** ) <br> v. ) <br>   ) <br>   ) <br> **CAROLYN W. COLVIN,** ) <br>   ) <br> **Acting Commissioner of** ) <br> **Social Security,** ) <br>   ) <br>   ) <br> _____ ) | Civil Case No. 2:14-cv-01914-RMG-MGB <br><br><br><br> **REPORT AND RECOMMENDATION** |

Cindy Massey-Hickman, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on her 2010 applications for Title II disability benefits ("DIB") and Title XVI supplemental security income (SSI") under the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). The matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). Having carefully considered the parties' briefs, the administrative record, and applicable authority, the undersigned recommends that the Commissioner's final decision be **remanded**, based upon the following proposed findings of fact and conclusions of law:

**I.    Relevant Statutory Law, Sequential Process, and Burdens of Proof**

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). For purposes of the statute, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As the Commissioner correctly indicated, the Social Security regulations set forth a five-step sequential process that takes into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition. (AR 4, 24-25, citing 20 C.F.R. § 404.1520). The Fourth Circuit Court of Appeals has stated that, to be entitled to benefits, "[t]he claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production and proof through the fourth step. "If the claimant reaches step five, the burden shifts to the government." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). In the present case, the ALJ determined that the claimant was not disabled at the fifth step of the sequential process.

## II.  Factual Background and Procedural History

The relevant facts have been set forth in the ALJ's decision and are summarized here: Claimant was born December 15, 1960, communicates in English, is literate, and has a driver's license. She graduated from high school and finished three semesters of college in secretarial science (AR 35). She left college to join the Air Force and served for 10 years as a state-side administrative clerk. Her main duties were to keep records and make medical appointments. (AR 35-37, 257). She was in the Air Force Reserves for another 11 years until 2004. She indicates that in 2002, she applied for, and began receiving, veteran's benefits in the amount of $874 per month. (AR 34, indicating she receives 50% VA compensation, rated 30% for panic attacks and

30% VA compensation for headaches). She indicates she got married and retired from military service in 2004. She lives in a house with her husband, two adopted daughters (ages 22 and 24),[1] and two grandchildren. She is the primary caretaker for the grandchildren (ages 3 and 6).

Concurrently with her reserve service, she worked at UTI Logistics for 14 years until 2008 (AR 35, 39-41, 257). This job involved handling materials in a yarn and carpet manufacturing plant. She stopped working at the factory in 2008 over what she characterizes as a "misunderstanding." (AR 37, indicating "the manager thought I had an attitude, but I didn't have an attitude"). She filed an unsuccessful worker's compensation claim in 2009. She then worked in a cafeteria for Johnson Foods (food service company) for eight months before quitting in June 2010. (AR 37, 257). She quit such job due to "stress" and because she wanted to raise her grandchildren. (AR 285). She testified that she collected unemployment benefits for a full year.

With respect to activities of daily living, the claimant indicates she is able to take care of her young grandchildren, drive her car, shop, cook meals, perform household chores, manage her funds, pay bills, watch television, interact with friends, talk on the phone, and take care of her own hygiene (AR 258). The claimant indicates that "she has never received any type of medical or psychotherapeutic intervention for these reported panic attacks, even though she has been experiencing them for 25 years." (AR 258). She also indicates she has not sought any counseling and has never been psychiatrically hospitalized. (AR 258).

On February 27, 2011, the claimant, through counsel, filed applications for DIB and SSI benefits, alleging a disability onset date of June 15, 2010. At the time of filing, she was age 49 and classified as a "younger individual," but during the pendency of her application, she changed age category to "closely approaching advanced age." She alleged disability due to migraine

---

[1] Claimant indicates that one daughter is bi-polar, that the other daughter has sickle cell anemia, and that neither one works. She testified the bi-polar daughter was "in and out" of the household. (AR 51).

headaches, anxiety/panic attacks, alopecia, hypothyroidism, ear pain, and back spasms. (AR 161). The application was denied initially and on reconsideration.

Upon request, the ALJ held a hearing on October 19, 2012, at which claimant (represented by counsel) and a vocational expert ("VE") both appeared and testified. (AR 28-58). The VE classified the claimant's relevant past work experience as materials handler (semi-skilled, heavy), hand packager (unskilled, medium), and cafeteria worker (unskilled, light).[2] (AR 39-41). The VE testified that, within the restrictions posed in the hypothetical questions, the claimant could perform unskilled jobs at the medium exertional level, such as assembler and packer (3,600 jobs in South Carolina, and 237,000 jobs nationally), and unskilled jobs at the light exertional level, such as product sampler, grader and sorter, and quality control examiner (totaling over 5,000 jobs in South Carolina, and 184,000 jobs nationally). (AR 22).

In addition to medical records and witness testimony, the ALJ considered several psychiatric and medical reviews by DDS state agency physicians (Exs. 7F, 9F, and 12F), as well as four RFC assessments (two mental, two physical) by DDS state agency physicians.[3] (Exs, 4F, 6F, 10F, 11F). Additionally, clinical psychologist Dr. Nicholas DePace, PhD, conducted a comprehensive mental status examination. (AR 257-260).

The ALJ issued a decision, finding that the claimant was not disabled from the onset date of June 15, 2010 through the date of decision on December 4, 2012. Specifically, the ALJ found that: 1) claimant met the insured status requirements; 2) she had not performed any substantial gainful activity since the alleged onset date; 3) she had "severe" impairments due to headaches

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds; and heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 404.1567(a-c).

[3] DDS stands for "Disability Determination Services."

and panic attacks; 4) the impairments did not meet or medically equal the criteria of any Listing;[4] 5) she retained the RFC to perform a range of unskilled medium work within various restrictions; 6) she could not perform all of her past relevant work; 7) but based on her RFC, age, education, work experience, and the VE's testimony, the claimant could still perform a significant number of jobs existing in the national economy. (AR 12-23). The ALJ concluded that the claimant was not disabled from the alleged onset date through the date of decision. The Appeals Council denied review, and the ALJ's decision is the final decision of the Commissioner.

### III. Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401); *Hunter*, 993 F.2d at 34 (same). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996).

The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id*. at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when

---

[4] An ALJ has a duty to consider all medically determinable impairments, not just those that are deemed "severe." 20 C.F.R. §§ 404.1523, 416.923. Impairments are considered separately and in combination. Claimant bears the burden of establishing that his impairment met the criteria of a Listing or is "at least equal in severity and duration to [the] criteria of any listed impairment." 20 C.F.R. § 404.1526.

reviewing disability determinations"); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) (same). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

**IV.  Arguments Presented**

The claimant argues that the ALJ did not: 1) properly assess the "opinion evidence" of Nurse Grant (DE# 13 at 15-17); 2) properly assess the "opinion evidence" of the VA disability rating (at 17-20); 3) explain the RFC findings as required by SSR 96-8p (at 20-21); and 4) adequately evaluate claimant's credibility (at 22-28). The Commissioner responds that: 1) "the ALJ accounted for all of Plaintiff's credibly-established limitations" (DE# 14 at 7-9); "substantial evidence supports the ALJ's credibility analysis" (at 9-11); and 3) "remand is not warranted for a further evaluation of the VA disability rating" (at 11-14).

**V.  Analysis**

First, the ALJ gave "significant weight" to the "opinion" of Nurse Margaret Grant. (AR 20, citing 8F). The Commissioner indicates that Nurse Grant "performed" a compensation and pension ("C & P") examination on June 9, 2011. (DE# 14 at 3). The ALJ indicated that Nurse Grant "treated" the claimant. (AR 20). The claimant disputes this.

The nurse's opinion is found in a very brief notation in an addendum (dated June 9, 2011) to the record for a previous neurological examination of the claimant on July 24, 2010 (which is not in the record). (AR 285). Nurse Grant wrote that the claimant's "SC disability of migraines, less likely as not render [sic] her unable to secure and maintain substanically [sic] gainful employment." (AR 285). The nurse indicated that claimant "left her previously [sic] employment of 8 months, citing stress and desire to raise her grandchildren" and noted under "Rationale" that

claimant "quit work on her volition." (*Id*.). The separate notations under the "Opinion" and "Rationale" headings appear inconsistent, although the ALJ seems to have relied largely on the fact that the claimant quit her job voluntarily because she wanted to raise her grandchildren. See, e.g., Guthrie v. Colvin, 2014 WL 2575318, *7 (E.D.N.C. 2014) (ALJ could properly note that claimant had left job for reasons other than alleged disability).

The claimant concedes that the ALJ could properly use Nurse Grant's opinion "to show the severity of the claimant's impairments and how they affect her ability to work if she had actually seen Massey-Hickman or had provided supporting evidence." (DE# 13 at 16). The claimant, however, correctly points out that Nurse Grant's addendum note indicates that she had "reviewed the file" but does not specifically indicate that she "saw" or "treated" the claimant on June 9, 2011. (DE# 13 at 16, citing AR 285). None of the related pages in Exhibit 8F indicate that Nurse Grant "treated" the claimant or personally interacted with her. It is not possible to determine whether Nurse Grant was the treating nurse during any part of the original neurological examination on July 24, 2010, as those medical notes are not in the record.

The ALJ cites Exhibit 8F, but that exhibit consists of cholesterol lab results (AR 19, 280-281), notes from several brief telephone phone calls where claimant inquired about routine matters, such as filling prescriptions (AR 284, 286), a progress note listing the claimant's weight, height, and blood pressure (AR 287), and notes from a January 27, 2011 examination indicating it was a "routine" consult request regarding menopausal symptoms (AR 282-283, 288-295).[5] The claimant asserts that "there is no supporting medical evidence to support Ms. Grant's opinion." (DE# 13 at 16).

---

[5] The "consult request" in Ex. 8F lists the claimant's VA disability rating as 50% (with 30% for panic disorder and 30% for migraine headaches), but provides no explanation for how or why this rating was assigned by the VA, or how it relates to the claimant's functional limitations. (AR 282). The consult request was for common menopausal symptoms, not any complaints related to headaches or anxiety. (*Id*. "Provisional Diagnosis: symptomatic menopause").

>The claimant points to SSR 06-03p, which explains:

>>Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:

>>• How long the source has known and how frequently the source has seen the individual;
>>• How consistent the opinion is with other evidence;
>>• The degree to which the source presents relevant evidence to support an opinion;
>>• How well the source explains the opinion;
>>• Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
>>• Any other factors that tend to support or refute the opinion.

(DE# 13 at 17, citing SSR 06-03p, 2006 WL 2329939, at *4). While not every factor for weighing opinion evidence will apply in every case, the claimant points out that the ALJ's decision does not indicate consideration of any the above factors in assigning "significant weight" to Nurse Grant's opinion. In response, the Commissioner restates that Nurse Grant conducted the "C&E examination" and that the claimant's migraines were "less likely to render her unable to secure and maintain substantially gainful employment, as she quit working on her own volition." (DE# 14 at 8). The ALJ's discussion of Nurse Grant's "opinion" is referred to in the RFC section of the ALJ's decision and appears to relate primarily to the ALJ's credibility determination. (AR 20). Given that the facts underlying the nurse's notation cannot be verified on the present record, and given that the ALJ gave such opinion evidence "significant weight," the undersigned cannot determine whether the ALJ's determination is supported by substantial weight under the correct legal standards. Remand is therefore appropriate.

Second, the claimant argues that the ALJ did not properly assess the "opinion evidence" of the VA disability rating. (DE# 13 at 17-20). The ALJ assigned "some weight" to the opinion of the Department of Veterans Affairs, which had assessed a 50% service-connected disability, with 30% for panic disorder, 30% for migraine headaches, and 0% for ear infection. (AR 20, 282).[6] After correctly observing that the VA rating was made under different criteria and was not binding in this case, the ALJ found "severe impairments" of headaches and panic attacks, but indicated "I do not find that 30 per cent impairment ratings are inconsistent with the limitations in the [RFC] assessment, detailed above." The ALJ did not explain how the limitations in the RFC were consistent with, or accounted for, the VA's impairment ratings.

The ALJ is correct that the Commissioner is not bound by disability determinations rendered by other governmental agencies. The regulations provide:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rule and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. However, disability decisions rendered by other governmental agencies, such as the VA, must still be considered, along with all other relevant evidence in the case record. SSR 06–3p, 2006 WL 2329939, at *7 ("These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s)."). The Fourth Circuit Court of Appeals has explained that an ALJ must give "substantial weight" to a VA disability rating, but may give it "less weight" when the record "clearly demonstrates that such a deviation is appropriate." *Bird v. Commissioner*, 699 F. 3d, 337 (4th Cir. 2012); see also,

---

[6] It is unclear how these percentages were calculated. Claimant's ear ache was a minor transitory complaint that was not disabling.

*Cooley v. Colvin*, 2015 WL 1518096, *21-22 (D.S.C.) (remanding to Commissioner on two grounds, including a failure to adequately develop the record).[7]

In the present case, the ALJ has not adequately explained why deviation is appropriate. The ALJ is deviating from "substantial weight" while appearing to state that the VA rating is consistent with the RFC determination. This is difficult to reconcile. The ALJ mentioned the weight assigned to the VA rating (which was listed in a progress note), but did not otherwise discuss that rating or how the assessed RFC would account for it. Moreover, no rationale for the VA's rating decision (or the medical evaluations upon which it was based) appears in the record. This, and the absence of any explanation of how the alleged VA rating is consistent with the claimant's RFC, makes it difficult to determine whether the ALJ's decision is supported by substantial evidence under the correct legal standard.

With respect to development of the record, the Fourth Circuit Court of Appeals has held that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); see also, e.g., *Kersey v. Astrue*, 614 F.Supp.2d 679, 693–94 (W.D.Va. 2009) (observing that the medical evidence must be "complete enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." (citing 20 C.F.R. §§ 404.1513(e), 416.913(e)). "Where the ALJ fails in [the] duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). For this additional reason, remand is appropriate here.

In related arguments, the claimant contends that the ALJ did not adequately explain the RFC and credibility findings. (DE# 13 at 20-28). The claimant complains that the ALJ did not

---

[7] The ALJ's decision in the present case was issued one month after the *Bird* decision.

find her complaints of debilitating headaches and panic attacks fully credible, and argues that the ALJ allegedly "failed to explain how a limitation to unskilled work sufficiently accounted for severe impairments of migraine headaches and panic attacks." (DE# 13 at 21, 24).

The ALJ discussed the claimant's activities of daily living, her minimal treatment records for any headaches and/or panic attacks, and her ability to engage in full-time work on a sustained basis for many years despite her claim that she had been having these problems "for 25 years." (AR 18-20, 257-259). The ALJ found that the claimant's allegations about the severity of her symptoms were "not fully credible." (AR 18-19, citing Exs. 1F, 3F, 5F, and 8F). See, e.g., *Tanner v. Commissioner*. 602 Fed.Appx. 95 (4th Cir. 2015) (holding that claimant's subjective complaints were inconsistent with the medical evidence and were not fully credible). A claimant's subjective description of symptoms alone cannot establish disability. 20 C.F.R. §§ 404.1529(a, c), 416.929(a, c); *see, e.g., Bourinot v. Colvin*, 2015 WL 1456183 (D.Mass.).

The ALJ then determined the claimant's RFC, which is defined as "the most [one] can do despite [one's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p. Consistent with the evidence of record, including the RFC opinions of claimant's physical abilities, the ALJ found that claimant was capable of performing a range of medium work. The ALJ assigned certain postural and environmental restrictions, including that claimant should not climb ladders, ropes, or scaffolds, could only stoop "occasionally," and should not be exposed to strong chemicals and concentrated hazards, including unprotected heights and dangerous machinery with exposed moving parts. The ALJ limited claimant to "unskilled" tasks due to her alleged headaches and panic attacks. (AR 17).

At the hearing, the ALJ posed a hypothetical question that restricted claimant to unskilled work with "only occasional indirect interaction with the public." (AR 57). The VE testified that,

at the medium exertional level, claimant was capable of working as an assembler or packer, and at the light exertional level, claimant was capable of working as a product sampler/weigher, grader/sorter, and quality control examiner. (AR 57). The VE indicated that these jobs "are all away from the public, light industrial sorts of situations." In other words, the ALJ did account for "stress" (i.e. from dealing with the public) in the hypothetical to the VE at the hearing.

Unskilled work away from the general public is generally recognized as less "stressful" than work involving frequent interaction with the public. See, e.g., *Dunn v. Colvin*, --- Fed.Appx. ----, 2015 WL 3451568 (4th Cir. (Va.)) (affirming ALJ's decision where ALJ indicated that "[d]ue to her psychiatric impairments, [claimant] is ... limited to tasks that only require limited contact with the general public, involving simple, unskilled work tasks."). In *Dunn*, like the present case, the evidence indicated that claimant was "capable of simple routine work in a nonstressful environment with limited contact with the public and coworkers." *Id*. Thus, while the claimant's arguments regarding the ALJ's RFC and credibility determinations lack merit, the problems with the weighing of Nurse Grant's opinion and the weighing of the VA's disability rating warrant further explanation and further development of the record.

## RECOMMENDATION

Accordingly, the Magistrate Judge **RECOMMENDS** that the Commissioner's final decision be **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDED** to the Commissioner for further proceedings.

July 20, 2015

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE